May it please the Court. My name is Hillary Hahn and I'm appearing today on behalf of the petitioner. The law in the circuit makes clear that in order to find an asylum applicant not credible, the agency must provide a legitimate, articulable basis for doing so. Now that's a case whether the agency provides one basis for doing so, or as in this case, where the immigration judge provides nine different bases. The IJ's decision in this case is not supported by substantial evidence because, despite the number of reasons that the IJ gave for finding him not credible, not one of those is a proper basis for doing so. The reasons that the IJ gave fall generally within two different categories. One are generalized statements that just aren't specific examples of evasiveness and contradiction. For example, her discussion of why he wasn't active with the All-India Sikh Student Federation for six years, his alleged lack of ability to describe his medical condition, his alleged inability to describe political activities that he was involved in, and the statement that he, quote, didn't really spend much time talking about going door-to-door for the Federation. Those all fall into the category of just generalized statements. The rest of the IJ's reasons for finding Mr. Tind not credible were alleged inconsistencies in the record. As we stated in our opening brief, and I won't go through them unless the court wants me to go through any particular one, when you carefully review the record, no reasonable fact finder could find that any of these are actual inconsistencies in the record. The other point to be made about these is that even though these aren't actual discrepancies, even if the court were to find that they were, almost every single one of them falls within the category of a minor inconsistency that doesn't go to the heart of the claim. This court held that if a discrepancy is not an obvious attempt to enhance the claim of persecution, then it has no bearing on credibility. The court found issues such as the location of a political rally or the date, you know, discrepancies in dates on a birth certificate to be minor inconsistencies. In this case, the issue of why Mr. Tind wasn't active with the Federation for six years, his alleged lack of understanding of political issues, the question of whether AMR preaching ever took place before 1996, whether he was bothered by the police once or twice between his arrests, and the identity of the family member with whom he stayed after he was arrested, all of those constitute minor inconsistencies, even assuming that the court were to find that they really were discrepancies in the record. The governments argued in their brief that by analyzing each of these inconsistencies separately, that we, quote, fail to see the forest for the trees. That's not the case. I mean, it's a practice of this court to go through a list of inconsistencies or discrepancies offered by an IJ or by the board and determine whether any of those is a major inconsistency that goes to the heart of the claim. If none of them are, then the agency's decision is not supported by substantial evidence. And this is the only approach that would really make sense. An IJ can't somehow offer three minor inconsistencies or three statements that really don't go to credibility at all and somehow bootstrap those into a finding that he was credible as to something that was part of the heart of the claim. That's not how the case law of this circuit works. The government also argued in its brief that the IJ has implicitly found that Mr. Tin's testimony was inconsistent with country conditions. The court can reject this argument for a number of reasons. First of all, the court's made clear that any credibility finding has to be explicit. There are no implicit credibility findings. In this case, the IJ didn't cite to a particular statement in the country profile, the State Department's country profile, and identify how that was inconsistent with Mr. Tin's testimony. In fact, she didn't even cite to the country profile at all. The government's tried to, in their brief, substitute its reasoning for that of the IJ, basically going through the country profile, pulling out statements from that, and identifying how Mr. Tin's testimony was allegedly inconsistent with that. Well, had the IJ or the board done what the government did in its brief, at least that issue would be before the court. Because it hasn't, because they didn't, it's not before the court. Moreover, even assuming that the IJ explicitly relied on country conditions, it wasn't a specific and cogent reason for doing so. And beyond that, to the extent that it was specific and cogent, all the IJ said is that country conditions evidence shows that pro-Khalasan activities and police raids have been greatly reduced in India. Well, if they've been greatly reduced, there's nothing inconsistent with Mr. Tin saying that he was involved in pro-Khalasan activities and that he had problems with the police. A final reason to reject the government's argument about country conditions is that under this court's decision in Shaw, which we cited in our reply brief, it's improper to use a generalized statement in a country profile to find somebody not credible as to their description of actual past persecution that they suffered. That's exactly what the government wants the court to do in this case. A final point is that the government seems to acknowledge in its brief that the IJ applied kind of a different credibility standard to Mr. Tin than is consistent with the law of the circuit, and it attempts to justify that by pointing to a statement in the country profile about the alleged high level of misrepresentation in Sikh asylum cases. First of all, that's not before the court because the IJ and the board never relied on it. Moreover, it would create an unworkable standard where different credibility standards are applied to different people from different countries, and there's no basis for doing that in the case law of this court. It seems to us that really the whole discussion of country conditions is more of an attempt to divert the court from what the IJ really found in this case, and if you look at what the IJ really found in this case, the only conclusion that you can come to is that substantial evidence doesn't support the IJ's finding, and in this case it would be appropriate to find that Mr. Tin credibly demonstrated that he suffered past persecution and to remand this case to the board to determine whether country conditions have changed. What's the strongest authority from this court supporting your position? Just generally on the credibility issues? Well, I gather that your position is that what he was faulted for didn't, although there were lots of them, it didn't amount to much. I was just trying to look at a case where similar arguments were made and we agreed with it. I think cases like Shaw, Garovias, in those cases the IJ or the board offered a number of different reasons and the court rejected all of them. I think it's the same whether it's three or four or nine. Credibility? They were credibility cases, yes. Otherwise, I'll reserve my time for rebuttal. Thank you. May it please the Court, Victor Lawrence again for the Attorney General. This Court should deny this petition for review. Mr. Tin, as an applicant for asylum, was required to provide credible, convincing evidence, and he has not done so in this case. Here again, the Board of Immigration Appeals adopted this immigration judge's opinion. Like the brief in the last case and this case, that was not argued below that the Board of Immigration Appeals did not adopt the immigration judge's opinion. But here they adopted the opinion because this Mr. Tin did not qualify for asylum because of significant credibility problems that do go to the heart of his claim. And under the substantial evidence standard, the factual findings of this immigration judge who was present to firsthand observe the demeanor and the sincerity of this witness as he responded to questions from his counsel, INS counsel, and directly from the court, those factual findings must be upheld unless any reasonable adjudicator would be compelled to conclude to the contrary. Here again, this petitioner had a full and fair opportunity to be heard. He had at least two hearings before the immigration judge, but he failed to make out his case that he was credible. Here again, the immigration judge provided careful review. She gave specific, cogent reasons, nine or ten of them, that show major inconsistencies or contradictions with respect to Mr. Singh's testimony. Now, you may be able to disagree with one or two or perhaps more of these inconsistencies and say, well, I really don't think that's inconsistent. I think that you can find either way on that. That's not the question. Under the substantial evidence standard, you have to determine that any reasonable adjudicator would be compelled to find the different conclusion, not just that you simply can see two different answers or two different scenarios for a particular inconsistency or contradiction that's been raised. The State Department reports are an important part of this case. I have trouble with that part of the government's argument because of the Shaboob case. Is that correct? Shevshub case? That's what the petitioner raised, yes. Yeah, I have trouble with the government's argument. Isn't the petitioner correct on that? You can't use a State Department report to contradict the evidence in the record? I think you can. Am I overstating that? Maybe if I am, correct me, please. I believe that is somewhat of an overstatement. Here you have a report that's put out by the State Department that carefully analyzes country conditions and analyzes applications of asylum applicants from those particular countries. It's put into the record all the time by either petitioner or petitioner. That's changed conditions, right? Changed conditions? I'm sorry? In other words, you can look at State Department reports to assert that conditions have changed, perhaps for future persecution or whatever. But have we ever allowed a State Department report to contradict the testimony of an applicant? I think you can allow a State Department report to shed light on an applicant's credibility with respect to his testimony. If an applicant, for instance, is saying that beatings were going on at the police station from the years 1995 to 1997 and the State Department report directly states that there are absolutely no reports of any beatings at any time after 1993, that would be a reliable contradiction between a petitioner's testimony and a State Department report. And I believe that it's our position that that is an allowable contradiction. And his testimony does conflict with country reports. What I just gave you was a hypothetical, I think you understood. But here the petitioner states that he was subject to abuse in April 1996 and April 1997. The State Department report says that police abuse has declined very significantly since 1993. This is all things that are allowable for an immigration judge to consider when determining the credibility of the applicant. But importantly, this petitioner who claims that he was being persecuted because of his political and religious beliefs was unaware of key events that happened in the pro-Khalistan cause that he claimed to be very much a part of. First, there's this whole issue, as we said, of his almost complete lack of participation between 1990 and 1996, despite saying that this was an important thing to him, the pro-Khalistan cause. But he didn't know, and it came out in the record, that he didn't know the nature or significance of the elections in 1989. He didn't know what significant event occurred to the leader of the Khalid al-Party. And the State Department specifically says that at page 154 of the record, lack of knowledge about political events is evidence that the applicant is not politically active and may call into question his credibility. The judge was reasonably relying on that State Department report in ascertaining whether or not Mr. Thind had any knowledge about the political events about which was part of his cause in making a pro-Khalistan state. As I said, he didn't participate in the All India Sikh Student Federation activities between 1990 and 1996. The immigration judge laid these out very well. The incident with the beatings, of course, is another major part of Mr. Thind's case in the sense that that's why he says he's suffering persecution. But he's testified that after the first beating, he couldn't walk, hold a pen, or lift small things for almost three weeks, that the beating was that severe. When asked what was your treatment for that, all he said was he was told to relax or take bed rest and take some unnamed medicine that he wasn't aware of. It raised suspicion in the immigration judge's mind, especially when after the second beating, which the petitioner described as even more severe, he says the doctor merely tells him as far as the diagnosis, your bones are weak, and that's why you couldn't walk or write for three weeks. The judge reasonably looked at this and observed this testimony and determined that that seemed like an unlikely thing for a diagnosis, especially when you're saying you can't walk for three weeks or even hold a pen, that your bones are weak. There are inconsistencies in the Amrit preaching, the Amrit being baptism. At page 79 of the record, referring to the date of January 5, 1990, petitioner clearly stated at that time there was a preaching of Amrit, that baptism occurred in January of 1990. Many pages later in the transcript, page 117, referring to Amrit preaching, petitioner was asked, It was never done, to the best of your knowledge, prior to April 1996. No. Page 125, and never before 1996 did anyone preach Amrit. Is that right? Yes. It's important. This is an important contradiction. It goes to the heart of his asylum claim because he's saying that he was persecuted in part because of what happened at these Amrit events. These are not minor inconsistencies. These go directly to the heart of his claim. The amount of time it took him to recover from these injuries, he says it took him two to two and a half weeks to recuperate from an April 14, 1996, beating, after which he said he couldn't walk, write, or lift anything. Then he's asked about whether he voted in the 1996 election. He says yes, he voted, and in fact he walked a kilometer to get there. The election was less than two weeks after that beating. And then only when he's pressed on this, well, how did you possibly walk to this election when you said you couldn't walk for two and a half weeks, and the election polls were a kilometer away? Then that's when he says, oh, well, I had help walking. And we don't know what that means because it wasn't followed up on. But the judge reasonably looked at this evidence and concluded that this petitioner was not being truthful. And no evidence has been presented by the petitioner to show that any reasonable adjudicator would be compelled to come to a different conclusion. I think I covered all of the major conflicts in his testimony, and I thank you for your consideration. Thank you. I just want to address a couple of the issues. First of all, beyond the fact that the country conditions evidence issue wasn't raised by the IJ and beyond the fact that she never cited to the country profile, the idea that police abuses have declined, even that statement in the country profile is in no way inconsistent with the fact that police abuses do occur. And in kind of an analogous situation, in Borja, the court found that even though police abuses had declined and the country conditions hadn't changed to such an extent that the person no longer had a fear of persecution. As far as some of these inconsistencies, I think we covered them to a great extent in our brief, but I just want to make a couple of comments. With regard to the alleged significant event that happened to an Akali Dalman member, there's a couple of things. First of all, Mr. Tind did make a lot of statements to show that he had knowledge of political activity, the goals of his party, the reasons that it arose. But this is a good example of the IJ's decision. She talks about the fact that he wasn't aware of a significant event that happened to an Akali Dalman member. Well, first of all, he wasn't a member of the Akali Dalman. Secondly, no one, not the IJ, not the board, not the government, has identified what that particular event was. So there's nothing in the record that shows why he should have known that or what he should have known. Another point the government made was that... What's the political affiliation that he's claiming asylum? The LNDC Student Federation. And the other point about that, too, is that this... She was asking him about an event that happened in 1989, when he was 14 years old, before he was really involved with the party. That just doesn't go to the heart of his claim. I thought that's when he said he joined it. In 1990, when he was 15. She's asking about something that happened in 1989. And the other thing that the government said was that certain things kind of raise a suspicion in the mind of the IJ. Well, really, that's nothing more than just speculation and conjecture. The fact that the IJ might have thought that he should have been treated in a different way than he said he was treated, that doesn't provide the kind of inconsistency that the court requires to find someone not credible. Thank you. Thank you. Okay. The case just argued is submitted for decision.
judges: Schroeder, O'scannlain, Tashima